**Sheila DODGE, et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. C–3–96–110.**

United States District Court,
S.D. Ohio,
Western Division.

March 8, 2001.

Michael Burdge, Dayton, OH, for Plaintiffs.

Pamela Stanek, Christopher Carrigg, Gregory Berberich, Dayton, OH, for Defendants.

DECISION AND ENTRY OVERRULING THE MOTION OF THE UNITED STATES TO DISMISS PLAINTIFF'S NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS, ARISING OUT OF THE ACTIONS OF CONNER AND MOORE (DOC. # 86–1); THE MOTION OF THE UNITED STATES, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ON ABOVE MENTIONED CLAIMS (DOC. # 86–2) SUSTAINED; STATE LAW RETALIATION CLAIM AGAINST FACILITIES PLUS AND RICHARD MAST IS SOLE REMAINING CLAIM; CONFERENCE CALL SET TO˙ FIX NEW TRIAL DATE

RICE, Chief Judge.

The instant litigation arises out of the alleged sexual harassment, by two members of the United States Air Force, of Plaintiff Sheila Dodge ("Dodge"), an employee of a temporary employment agency who was assigned to Wright Patterson Air Force Base by the agency's customer.[1] Remaining as party Defendants in this litigation are the United States, Facilities Plus, Inc. ("Facilities Plus"), and Richard Mast ("Mast"). As stated previously by the Court, the instant litigation is the consolidation of three cases, C–3–96–110, C–3–96–307, and C–3–98–159.[2] The complex

1. This litigation was initiated by Dodge and her husband, Doug Dodge. As it has done in previous Decisions, the Court will use the term "Plaintiff" to refer to Sheila Dodge only.

2. Case No. C–3–96–307 was filed to foreclose the Defendant's argument that Case No. C–3–96–110 was filed too soon. On September 10, 1996, this Court consolidated Case Nos. C–3–96–110 and C–3–96–307. Case No. C–3–96–307 was ordered administratively processed. Future filings were to be made under Case No. C–3–96–110 (Doc. # 15, Case No. C–3–96–110). On April 24, 1998, the Dodges again filed suit in federal court against the USAF and the United States (Case No. C–3–98–159), stating the same factual allegations

as set forth in Case No. C–3–96–110. Plaintiff indicated that the United States Government Defendants had been dismissed from Case No. C–3–96–110, due to an assertion that an administrative claim first had to be presented and denied by the United States Air Force. Case No. C–3–98–159 was filed after she had complied with that requirement. On August 12, 1998, Case No. C–3–96–110 and Case No. C–3–98–159 were consolidated (Doc. # 48 of Case No. C–3–96–110; Doc. # 9 of Case No. C–3–98–159). Case No. C–3–98–159 was administratively processed. Again, all future filings were to be made under Case No. C–3–96–110.

procedural history of these lawsuits was recently reiterated in this Court's Entry of October 31, 2000 (Doc. # 95), and the Court will assume the parties' knowledge of that history.[3]

■ Pending before the Court are the Motion of the United States to Dismiss Plaintiff's negligent and intentional infliction of emotional distress claims, arising out the conduct of Jim Conner ("Conner") and Patrick Moore ("Moore") (Doc. # 86-1), and its Motion, in the alternative, for Summary Judgment on those claims (Doc. # 86–2). Due to the presentation of evidence by the parties outside of the pleadings, the Government's Motion will be addressed as one for summary judgment. The Government's Motion to Dismiss (Doc. # 86–1) is, accordingly, OVERRULED. As a means of analysis, the Court will first set for the standard governing all motions for summary judgment, and will then turn the parties' arguments.

## I. Standard for Motion for Summary Judgment

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those por-

tions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991)(The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.")(quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v.*

---

**3.** The Court notes that the claims asserted against Defendants United States Air Force (Doc. # 20, Doc. # 61), Jim Conner (Doc. # 24), Patrick Moore (Doc. # 97), and Sheila Widnall (Doc. # 20) have been dismissed in their entirety. With regard to Conner, the U.S. Attorney had certified that he had acted in the scope of his employment at the time of the events alleged in Plaintiff's Complaint

(Doc. # 16). The United States was, therefore, substituted for Conner as Defendant. Although the United States did not certify that Moore had acted within the scope of his employment and, therefore, was not substituted for him, the Court dismissed Moore from this litigation for want of prosecution by Plaintiff (Doc. # 97). The only remaining federal Defendant is the United States of America.

*J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994)("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility

determinations must be left to the factfinder. 10A Wright, Miller & Kane, *Federal Practice and Procedure,* § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...") Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

II. *Negligent Infliction of Emotional Distress Claim (Portion of Count Four)*

In its Motion, the United States requests summary judgment on Plaintiff's claim of negligent infliction of emotional distress, on the ground that such a claim is not cognizable in the present circumstances. The Government argues that Ohio courts have limited negligent infliction of emotional distress claims to situations where the plaintiff was a bystander to an accident or was in fear of physical consequences to her own person. Citing

*Hatlestad v. Consolidated Rail Corp.,* 75 Ohio App.3d 184, 598 N.E.2d 1302 (1991), it argues that the claim is not recognized in the employment context. Plaintiff has responded that the Court has concluded that no employer-employee relationship existed between Plaintiff and the Government and, therefore, *Hatlestad* is inapposite. Plaintiff asserts that the Government cannot argue that Plaintiff is *not* an employee for purposes of her discrimination claims and yet argue that she *is* an employee for purposes of her emotional distress claims.

█ Ohio courts have narrowly limited the scope of negligent infliction of emotional distress claims. "Ohio courts have limited recovery for claims alleging negligent infliction of emotional distress to situations such as where the plaintiff was a bystander to an accident or was in fear of physical consequences to his own person." *Gearing v. Nationwide Ins. Co.,* 76 Ohio St.3d 34, 40, 665 N.E.2d 1115, 1120 (1996); *Kulch v. Structural Fibers, Inc.,* 78 Ohio St.3d 134, 162–63, 677 N.E.2d 308, 329 (1997)(recovery for negligent infliction of severe emotional distress has typically been limited to instances where the plaintiff has either witnessed or experienced a dangerous accident and/or was subjected to an actual physical peril); *Hartwig v. United States,* 80 F.Supp.2d 765 (N.D.Ohio 1999). As stated in *Tschantz v. Ferguson:*

[A] plaintiff may only recover for emotional harm negligently inflicted by a defendant by instituting a "traditional" claim for negligent infliction of emotional distress. *Hatlestad,* 75 Ohio App.3d at 191, 598 N.E.2d at 1306–1307. The plaintiff will then be required to show that he or she (1) was a bystander to an

accident, (2) reasonably appreciated the peril thereof, and (3) suffered serious and foreseeable emotional distress as a result of his cognizance or fear of the peril. *Paugh,* paragraphs three and four of the syllabus.

97 Ohio App.3d 693, 714, 647 N.E.2d 507, 521 (1994).

█ In general, Ohio law does not recognize a separate tort for negligent infliction of emotional distress in the employment context. *Carmen v. Gould, Inc.,* 1992 WL 96349 (6th Cir.1992); *Hatlestad v. Consol. Rail Corp., supra; Hanly v. Riverside Methodist Hosp.,* 78 Ohio App.3d 73, 83, 603 N.E.2d 1126 (1991)(affirming summary judgment against a plaintiff claiming negligent infliction of emotional distress arising from the termination of his employment); *Tarver v. Calex Corp.,* 125 Ohio App.3d 468, 485, 708 N.E.2d 1041, 1052 (1998)(rejecting claim for negligent infliction of emotional distress in same-sex sexual harassment context). For example, in *Tschantz,* the Eighth District Court of Appeals rejected the plaintiff's claim for negligent infliction of emotional distress, which was based on an alleged forced sexual relationship with her supervisor, on the ground that the claim was not cognizable in the employment context and the plaintiff's allegations did not meet the required elements. 647 N.E.2d at 521; *see also Johnson v. Cox,* 1997 WL 152636 (Ohio App. Mar. 28, 1997)(rejecting negligent infliction of emotional distress claim in employment context, including situation where employee was sexually harassed). In general, federal courts in Ohio have likewise limited such claims. *Carmen, supra; Osman v. Isotec, Inc.,* 960 F.Supp. 118, 122 (S.D.Ohio 1997)(Dlott, J.).[4]

4. The Court notes that two district courts within the Sixth Circuit have allowed a negligent infliction of emotional distress claim against an employer, based on sexual harass-

ment by a supervisor, where the plaintiff has been the victim of a sexual assault. As stated by Judge Katz, "claims for negligent infliction of emotional distress predicated on workplace

Herein, although the Government was not Plaintiff's employer, her allegations against Conner and Moore stem from contact with them in performing her job duties, and she regularly worked with them. Although they had different employers, they worked as co-workers. Thus, Plaintiff's negligent infliction of emotional distress claim arises in an employment context. Even if such a claim were available to Plaintiff, the evidence herein does not support liability under the present circumstances. Construing Plaintiff's evidence in the light most favorable to her, Dodge's claims are not akin to the traditional accident situation, to which Ohio courts have limited negligent infliction of emotional distress claims. *See Thatcher v. Goodwill Indus. of Akron*, 117 Ohio App.3d 525, 542, 690 N.E.2d 1320, 1331 (1997)("The tort of negligent infliction of emotional distress assumes that a bystander or witness to a sudden, negligently caused event is traumatized by its emotionally distressing occurrence."). With regard to Conner's conduct, Plaintiff has not provided any evidence that she believed that she was in danger of an actual physical peril due to his behavior. In addition, with regard to Moore's conduct, the Court notes that the claim of negligent infliction of emotional distress does not apply where the alleged tortious conduct is of an intentional nature. *Haller v. Phillips*, 69 Ohio App.3d 574, 579, 591 N.E.2d 305, 308 (1990); *Andolsek v. Jokic*, 2000

WL 1844750 (Ohio App. Dec. 14, 2000). The alleged sexually harassing conduct by Moore of which Plaintiff complains was intentional conduct, not negligent. (See Doc. # 86, Ex. 14, indicating that Moore's justification for his actions was "Because if you see something you want you have to go after it, or you'll never know if you could have had it."). Accordingly, the Court concludes that Ohio courts do not recognize Plaintiff's claim for negligent infliction of emotional distress based on Moore's actions. Defendant's Motion for Summary Judgment on Plaintiff's negligent infliction of emotional distress claim (Portion of Count Four) is SUSTAINED.

III. *Intentional Infliction of Emotional Distress Claim (Portion of Count Four)*

The United States asserts that it is entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress. To establish a claim for intentional infliction of emotional distress, Plaintiff must allege: 1) Defendant intended to cause emotional distress, or knew or should have known that its actions taken would result in serious emotional distress; 2) Defendant's conduct was extreme and outrageous; 3) Defendant's actions proximately caused Plaintiff's psychic injury; and 4) the mental anguish Plaintiff suffered was serious. *Hanly v. Riverside Methodist Hosps.*, 78 Ohio App.3d 73, 603 N.E.2d 1126 (1991); *Yeager v. Local Un-*

---

sexual harassment [have been permitted] only where the harassment complained of was of such severity as to constitute a felonious sexual assault under Ohio law." *Griswold v. Fresenius USA, Inc.*, 964 F.Supp. 1166, 1173 (N.D.Ohio 1997)(Katz, J.)(rejecting claim where plaintiff alleged only that the defendant touched plaintiff's chest, sides, and shoulders, and put her arm around him); *see Crihfield v. Monsanto Co.*, 844 F.Supp. 371 (S.D.Ohio 1994)(Spiegel, J.)(claim allowed where supervisor repeatedly fondled and exposed himself

to plaintiff, had a past history of sexually molesting female employees, and had a criminal conviction for indecent exposure). · However, the Court has not found similar Ohio state court decisions. In addition, the above cases have not addressed whether a negligent infliction of emotional distress claim would be viable if the assaulting employee were a co-worker, rather than a supervisor. Accordingly, the Court is not persuaded that these cases are relevant to the present circumstances.

*ion 20*, 6 Ohio St.3d 369, 453 N.E.2d 666 (Ohio 1983). The United States argues that Plaintiff's claim fails, because 1) Conner's actions were not extreme and outrageous, 2) Conner did not act with the intention of causing Plaintiff emotional distress, and 3) Moore was not acting within the scope of his employment.

Before turning to the elements of Plaintiff's claim, the Court must address three arguments raised by Plaintiff in her Opposition Memorandum (Doc. # 93). *First,* Plaintiff argues that Conner and Moore's conduct should be considered a joint enterprise. She argues that they often times engaged in their conduct together and in each other's presence. Consequently, she contends, "it is easy to see that the comments and conduct of Conner and Moore played off of each other so as to result in a joint and collective enterprise of verbally abusing Plaintiff and intentionally causing emotional distress." (*id.* at 5). She further alleges that it is arguable that the sexual assaults committed by Moore were the logical result of their previous joint activity and, therefore, Moore's assaults may be imputed to Conner (*id.* at 8). *Second,* Dodge contends that the United States has previously represented to the Court that Moore had, in fact, acted within the scope of his employment. Thus, she argues, the Government should be estopped from asserting that Moore's acts were outside of the scope of his employment. *Third,* Plaintiff argues that Moore's conduct fell within the scope of his employment. She asserts that much of Moore's conduct (*i.e.,* his offensive comments) was similar to Conner's, which the Government has certified *was* within the scope of his (Conner's) employment. Each of these arguments will be addressed in turn, following which the Court will address the "extreme and outrageous" element of Plaintiff's intentional infliction of emotional distress claim.

## A. *Joint Enterprise*

■ With regard to Plaintiff's first argument, the Court agrees with Dodge that it may be reasonable, in certain circumstances, to consider the effect of one individual's conduct on the reasonableness of another's actions. However, Plaintiff has not provided evidence that Conner and Moore acted as part of a joint enterprise. In her June 13, 1995, statement, Plaintiff indicated that "[m]ost instances when Pat [Moore] would make comments to me and both times he touched me, we were the only two people around." (Def. Ex. 14, Sheila Dodge June 13, 1995 statement). Thus, Plaintiff has acknowledged that Conner was not an active participant in most of Moore's harassing conduct. With regard to Conner's conduct, Plaintiff has provided evidence that he made inappropriate comments and often stared at her. The first of these incidents occurred in October, 1994, prior to Moore's arrival, during which Conner commented about the kind of donut he thought Plaintiff would like (Dodge Dep. at 43). The Court has been cited to only one incident in which Moore or Conner responded to the other's behavior. Specifically, Plaintiff indicates that when Conner stated that the office "had gotten $25,000 for her ass, and it had better be worth it," Moore laughed (*id.* at 83). Plaintiff has not cited to any additional evidence that Conner was aware of Moore's harassing behavior, that he agreed to its occurrence, or that he otherwise encouraged Moore to engage in sexually harassing conduct. Thus, the Court sees no basis to conclude that, although both Conner and Moore allegedly engaged in inappropriate behavior, they acted jointly to sexually harass Plaintiff and to inflict emotional distress upon her. Because there is no evidence that Conner and Moore acted in concert, the Court does not consider it reasonable to evaluate Conner's

conduct based on the apparently independent actions of Moore. Moore's alleged sexual assaults of Plaintiff will not be imputed to Conner. Accordingly, the Court concludes that, although Conner and Moore both allegedly engaged in sexually harassing behavior, their conduct must be considered separately to determine whether the United States may be held liable for either Moore and Conner's actions.

## B. Estoppel

■ Before turning to the issue of whether Moore acted within the scope of his employment, the Court must also address Plaintiff's estoppel argument. To reiterate, Plaintiff asserts that the Government should be estopped from arguing that Moore acted outside of the scope of his employment. In particular, she notes that Exhibit 5 to the Government's Motion to Dismiss (Doc. # 6 of Case No. C–3–98–159) consisted of a declaration by Patrick Moore, in which he stated: "All of my actions in this matter were within the scope of my official air force duties and under color of my office as a military enlisted member." Plaintiff further notes that Moore's declaration was made *after* his military non-judicial punishment, in which he accepted a reduction in grade and discharge, as punishment for his indecent assault on and communication of indecent language to Plaintiff.

■ Based on her memorandum, Plaintiff appears to rely on the doctrine of judicial estoppel to support her argument that the Government should be precluded from asserting that Moore acted outside of the scope of his employment. "Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich,* 530 U.S. 211, 120 S.Ct. 2143, 2154, 147 L.Ed.2d 164

n. 8 (2000); *Warda v. Commissioner of Internal Revenue,* 15 F.3d 533, 538 (6th Cir.1994)(the doctrine of judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by that same party in an earlier proceeding). An essential element of judicial estoppel is that the party had prevailed on its previous argument. *Blachy v. Butcher,* 221 F.3d 896, 908 (6th Cir.2000); *Teledyne Industries, Inc. v. NLRB,* 911 F.2d 1214, 1217–18 (6th Cir. 1990) (observing that a party is not bound by an unsuccessful argument in a prior proceeding).

According to Court's review of the record, the Government has attached Moore's declaration as an exhibit on a number of occasions (Doc. # 4, Doc. # 16; Doc. # 6 of Case No. 98–159). In each instance, that document was cited for the propositions 1) that Moore worked in the same area as Conner; 2) that his duties required him to participate in the assembling and disassembling of furniture under Facilities Plus' contract with the Air Force; 3) that, as a result, he frequently worked on projects with Plaintiff; and 4) that he did not direct Plaintiff's work or have supervisory control over her (*id.*). The Court has not found any instance in which the Government has argued that Moore acted within the scope of his employment with the Government, and has relied upon Moore's declaration to support that argument. In addition, prior to the Attorney General's decision as to whether she would certify that Conner or Moore acted within the scope of his employment, the Government repeatedly indicated that it was waiting for a response to its certification request (Doc. # 4, n. 1; Doc. # 5; Doc. # 8, Doc. # 14). It made no representation that Moore had acted within the scope of his employment. Thus, the Court sees no basis why the Government should be es-

topped from asserting that Moore did not act within the scope of his employment in connection with this Motion. In addition, the Court notes that Moore's statement regarding whether he acted within the scope of his employment (quoted, *supra*, page 13–14) is merely conclusory.[5] The declaration does not contain facts to support the conclusion that he so acted, and the Government has not provided the Court with any other evidence which would so indicate. Therefore, it does not appear that the Government has ever asserted that Moore acted within the scope of his employment. Accordingly, the Court concludes that the Government may assert that Moore's conduct was outside of the scope of that employment. Consequently, the Court now turns to whether Moore's conduct did, in fact, fall within the scope of his employment with the Air Force.

## C. Scope of Employment (Moore)

 As to Plaintiff's argument that Moore acted within the scope of his employment, Dodge has essentially challenged the Government's refusal to certify that Moore so acted. Under the FTCA, an individual may sue the United States for personal injury caused by a negligent or wrongful act or omission of an employee of the government who performs such act while acting within the scope of his employment. 28 U.S.C. § 1346(b). "Acting within the scope of his office or employment", in the case of a member of the military or naval forces of the United States or a member of the National Guard as defined in section 101(3) of title 32,

means acting in line of duty. 28 U.S.C. § 2671. "Acting in line of duty" for purposes of this section means acting within the scope of employment based on the applicable state law of *respondeat superior*. *Chandonais v. United States*, 1991 WL 93096, *1 (6th Cir. June 3, 1991).

 In the present case, Plaintiff initially brought claims against the United States under the FTCA, based on the conduct of Conner and Moore. She also brought claims against Conner and Moore individually. Conner was dismissed from this litigation following the Government's certification that he had acted within the scope of his employment. No such certification was provided for Moore. However, the fact that the United States failed to certify that Moore had acted within the scope of his employment does not establish, as a matter of law, that he did not so act. Rather, scope of employment is a question of law, to be determined by reference to the law of the state where the alleged wrongful conduct occurred. *See Coleman v. United States*, 91 F.3d 820, 823 (6th Cir.1996); *Arbour v. Jenkins*, 903 F.2d 416, 421–22 (6th Cir.1990). Thus, despite the fact that the United States has elected not to certify that Moore acted within that capacity, the Court may engage in an independent analysis of that issue as part of its evaluation of Plaintiff's intentional infliction of emotional distress claim, arising out of Moore's conduct. Moreover, the Court sees no reason why it cannot evaluate Moore's conduct to determine whether certain actions were taken within the scope of his employment, even if others were not.

---

**5.** The Court notes that, in the context of motions for summary judgment, Rule 56(e) provides that "supporting and opposing affidavits ... shall set forth such *facts* as would be admissible in evidence." Conclusory statements are insufficient. *See Locke v. Commercial Union Ins. Co.*, 676 F.2d 205, 206 (6th Cir.1982)(conclusory statement that plaintiff was discharged because of his age was insufficient to withstand summary judgment on age discrimination claim); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir.1992) (holding that conclusory statements are insufficient in summary judgment proceedings).

▮▮▮▮▮

▮▮▮▮ "The scope of employment issue does not focus on the alleged wrongful nature of the employee's actions; rather, the issue is the actions complained of and whether those actions are 'so divergent that [their] very character severs the relationship of employer and employee.'" *RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1144 (6th Cir.1996), quoting *Osborne v. Lyles*, 63 Ohio St.3d 326, 330, 587 N.E.2d 825, 829 (1992). Under Ohio law, an employee acts within the scope of her employment if his conduct: (1) is of the kind which he is employed to perform; (2) occurs substantially within the authorized limits of time and space; and (3) is actuated, at least in part, by a purpose to serve the employer. *Anderson v. Toeppe*, 116 Ohio App.3d 429, 436, 688 N.E.2d 538, 543 (1996); *RMI Titanium Co.*, 78 F.3d at 1143 ("Under Ohio law, an employee acts within the scope of his employment if the employee acts within his authority during the course of employment even though acting intentionally or maliciously."). On the other hand, an "intentional and willful attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person, is a clear departure from employment and his principal or employer is not responsible therefore." *Byrd v. Faber*, 57 Ohio St.3d 56, 59, 565 N.E.2d 584, 587 (1991); *Henson v. NASA*, 14 F.3d 1143, 1147 (6th Cir. 1994). "An employer is not liable for the independent acts of employees that in no way facilitate or promote the employer's business." *Anderson*, 688 N.E.2d at 543. Furthermore, for an employer to be liable for the acts of the employee, when that employee engages in intentional tortious conduct, the employee's behavior "must be calculated to facilitate or promote the business for which he was employed or engaged." *Cooper v. Grace Baptist Church*, 81 Ohio App.3d 728, 737, 612 N.E.2d 357, 362 (1992).

In *Kerans v. Porter Paint Co.*, 61 Ohio St.3d 486, 490, 575 N.E.2d 428, 432 (1991), the Ohio Supreme Court noted that federal courts have held that "where·an employee is able to sexually harass another employee because of the authority or apparent authority vested in him by the employer, it may be said that the harasser's actions took place within the scope of his employment." See *Mackey v. Milam*, 154 F.3d 648 (6th Cir.1998)(Air Force officers acted within the scope of their employment when they sexually harassed subordinate officer). Based thereon, Ohio courts have stated that supervisors may act within the scope of their employment, thus subjecting their employer to *respondeat superior* liability, when they engage in sexually harassing behavior toward a subordinate employee. However, where the harassment was engaged in by a co-worker, rather than a supervisor, such that the employee's actions were not vested with apparent or actual authority, the same conduct has not been held to be within the scope of the co-worker's employment. *Tarver, supra* (defendant's conduct was not within the scope of his employment, where there was no evidence that he was able to sexually assault employee due to apparent or actual authority vested in him by employer).[6]

▮▮▮▮ With regard to sexual assaults, Ohio courts have consistently held that such conduct is outside the scope of em-

6. Plaintiff notes that the United States has argued that no Air Force personnel had any supervisory authority over Plaintiff. Plaintiff attempts to rebut the Government's argument, citing to Master Sergeant Sherry Richmond's statement that she supervised both Moore and Plaintiff (Def.Ex.14). Even accepting Plaintiff's assertion that Richmond supervised Moore, Plaintiff has not directed the Court to evidence that Moore was also her (Plaintiff's) supervisor.

ployment. *Benner v. Dooley,* 2000 WL 1072462 (Ohio App. Aug. 2, 2000)(sexual assault was not within scope of employment); *Stephens v. A–Able Rents Co.,* 101 Ohio App.3d 20, 654 N.E.2d 1315 (1995)(felonious assault and attempted rape of customer was outside scope of employment); *see also Wood v. United States,* 995 F.2d 1122, 1123 (1st Cir.1993)(conduct amounting to an assault and battery are clearly outside scope of employment); *Doe v. United States,* 618 F.Supp. 503, 505 (D.C.S.C.1984), *aff'd,* 769 F.2d 174 (4th Cir.1985) (holding that an Air Force Major's exposing himself and suggesting sexual acts while counseling the plaintiff was "far beyond the scope of his employment"); *Turner v. United States,* 595 F.Supp. 708 (W.D.La.1984) (holding that a United States Army employee who deceived women into believing that, in order to join the Louisiana National Guard, they had to submit to complete physical examinations by him, was acting outside the scope of his employment).

In her June 13, 1995, statement, Plaintiff described Moore's conduct as follows:

> This is a summary of the assault events committed against me by Ssgt Patrick Moore. On 7 APR 95, I arrived at work at approximately 0730hrs, Bldg. 50, Area B, WPAFB, OH. Work began almost immediately after my arrival on that day. Pat (Ssgt Patrick Moore) told me he could talk to the right people and secure my job for me and that he was making a list on how I could repay him for it. I was very appreciative because I really liked my job there and I could use the work. Later that day, approximately 1200hrs, I went to the warehouse to retrieve a table with Pat. We were the only two people in the warehouse at the time. I proceeded upstairs with Pat to where the tables were stored. Pat was unusually quiet during this time. I entered the back room of the upper warehouse and when I turned to leave Pat grabbed me. He grabbed me with his right had and pressed my body against his. He took his left and pressed my pelvis against his. I believe he had an erection. Pat then took his right hand and ran it up under my shirt and bra. He then began trying to kiss me and further force himself upon me. My immediate reaction was one of shock. I twisted away from him and ran downstairs and outside. As I was running away he called after me and stated, "Come back. We can go to 2nd on the list and you don't have to take your clothes off for that." I didn't reply, I just kept on going. I remained outside and smoked a couple of cigarettes (approximately 15–20 minutes). When Pat emerged he was very apologetic. He was tripping over himself saying he was sorry, so very, very sorry. I believed him when he said it was a one time incident, it would never happen again and that he was extremely sorry. He then stated he just wanted to finish up so we could get out of there. I had my hands on the staircase railing when we entered the building again. Almost immediately after reentering the building Pat grabbed me and started pulling on me, to get me up the stairs. I continued to hold tight to the railing. Pat kept saying, "Let's go back up, it will only take a few minutes. Come on let's go. It won't take long." It was during this time I heard him say, "Don't worry, I'm the only one with a key to get into this building." At this time I felt threatened and felt I was in danger of being raped. I started thinking about how to get out of there. I jerked very hard away from him and broke free of his grip. I then ran back outside. I waited out there for Pat and we returned to building 50.... Then on 7 or 8 APR 95 Pat called me

downstairs in building 50 to the boiler room to help him with something. I followed him into the back room and he proceeded to take a bladed hand and run it down my body from breast to hip. Pat said, "I really like you from here down." I asked him why he was doing this to me. I told him I wanted nothing to do with him. On occasions when I asked him why he was doing these things to me he said, "because if you see something you want you have to go after it, or you'll never know if you could have had it.". . . Pat always made wise-guy comments to me, however, after the two assault incidents his comments turned extremely crude and sexual. He began making hand gestures to me across the room, symbolizing sexual intercourse. He also made mouth and hand gestures to me which symbolized felacio [sic]. One time he placed a drill up against my butt and said, "I'll screw you." I always made it clear to Pat and the others I wanted nothing to do with them in a sexual manner. . . .

(Doc. # 86, Def.'s Ex. 14). Plaintiff also indicated that Moore would sit backwards at his desk, stare at her, and make a finger in hand motion, with his tongue against the side of his mouth. He also stated various sexual comments to her, such as: 1) "I'll give you something to suck on."; 2) "I want to be your GYN."; and 3) "I wish you'd let me make you come." (*Id.,* Sheila Dodge May 15, 1995 statement).

Moore clearly acted outside of his employment when he committed acts that constituted an assault. In particular, his actions in the boiler room and in the ware-house, in which he grabbed Plaintiff and fondled her, were clearly done to satisfy his sexual desires, and not to further the Government's business. Because Moore's conduct was not within the scope of his employment, the Government cannot be liable for that conduct under the FTCA.[7]

As to the inappropriate comments, gestures, and stares, Moore's behavior occurred during work hours and at his work location. However, his actions were not related, in any way, to the kind of work which he is employed to perform. In addition, Plaintiff has stated that Moore informed her that his motivation when he engaged in sexually suggested behavior was to go after something he wanted. There is no evidence that he was motivated, in any way, to facilitate or promote the Government's business. Accordingly, the Court concludes that Moore did not act within the scope of his employment, when he allegedly sexually harassed and assaulted Plaintiff. Because Moore's conduct was not within the scope of his employment, Moore's conduct does not fall within the coverage of the FTCA, and the Government may not be held liable for it. The Motion of the United States for summary judgment on Plaintiff's intentional infliction of emotional distress claim, based on the conduct of Patrick Moore, is SUSTAINED.

As stated above, because Moore's conduct occurred outside of the scope of his employment, the government may not be held liable for his conduct, even if it meets the standard for "extreme and outrageous conduct." However, with regard to Con-

---

7. Although not mentioned by the parties, Plaintiff's claim for intentional infliction of emotional distress, arising out of Moore's sexual assault, appears to be subject to the FTCA's exclusion set forth in to 28 U.S.C. § 2680(h). *See Hartwig v. United States,* 80 F.Supp.2d 765 (N.D.Ohio 1999)(intentional infliction of emotional distress claim barred, because it arose out of defamation). Thus, in addition to the fact that Moore did not act within the scope of his employment in committing the alleged conduct, the Court is deprived of subject matter jurisdiction over that claim, as well.

ner, the Government *has* certified that he had acted within such scope, thus rendering it liable for his (Conner's) conduct, if that behavior constitutes "extreme and outrageous" conduct, as required for a claim of intentional infliction of emotional distress. Accordingly, the Court now turns to whether there is a genuine issue of material fact regarding whether Conner's actions constituted such conduct.

## D. *Extreme and Outrageous Conduct*

■ As stated, *supra,* in order for the United States to be held liable for Conner's conduct, on the ground that it constituted intentional infliction of emotional distress, his behavior must rise to the level of extreme and outrageous conduct. "Extreme and outrageous" has been described as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager,* 453 N.E.2d at 671; *Meyers v. Hot Bagels Factory, Inc.,* 131 Ohio App.3d 82, 721 N.E.2d 1068 (1999). The Ohio Supreme Court has adopted Section 46(1) of the Restatement of Law 2d, Torts (1965) and the accompanying comments as standards to be used in deciding emotional distress cases. *Id.* In particular, that court has quoted comment d, which states, in pertinent part:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam."

*Yeager,* 453 N.E.2d at 671, quoting Restatement (Second) of Torts § 46(1), comment d.

A number of courts have addressed intentional infliction of emotional distress claims, which are based on sexually harassing conduct. In *Perry v. Textron, Inc.,* 1997 WL 598398 (Ohio App. Sept. 26, 1997), the plaintiff alleged that a male co-worker sexually harassed her, battered her, and intentionally caused her emotional distress when he repeatedly touched her hands and upper thigh, and caressed her calf. In addressing her claim for intentional infliction of emotional distress, the court of appeals concluded that the co-worker's conduct, while inappropriate, was not so outrageous and extreme to create a genuine issue of material fact for a jury. Accordingly, the court affirmed the trial court's grant of summary judgment. *See also Retterer v. Whirlpool Corp.,* 111 Ohio App.3d 847, 856, 677 N.E.2d 417, 423 (1996)(receipt of blow-up dolls, cartoons, and an item labeled a "penis warmer" were insufficient to establish extreme and outrageous conduct).

The Sixth Circuit has also addressed what constitutes extreme and outrageous conduct in the sexual harassment context. Recently, in *Summerville v. Ross/ Abbott Laboratories,* 1999 WL 623786 (6th Cir. Aug. 10, 1999), the plaintiff alleged that

her co-worker had made "unwelcome lewd jokes, comments, body movements and baring of body parts, as well as sexual come-ons and unwelcome touching." The Sixth Circuit concluded that the plaintiff's intentional infliction of emotional distress claim was properly dismissed, because no reasonable juror would believe that her co-worker's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," as required under Ohio law. In *Griswold v. Fresenius USA, Inc.*, 964 F.Supp. 1166, 1174–75 (N.D.Ohio 1997), the district court likewise rejected a claim for intentional infliction of emotional distress, in which the plaintiff (a male) alleged that the defendant made sexual comments to him, such as "give me a kiss" and "you have a sexy ass;" touched his chest, sides, and shoulders; put his arm around the plaintiff; and frequently puckered his lips toward the plaintiff. The court concluded that the allegations constituted insults, indignities and annoyances of the sort to which liability does not extend, and that they did not rise to the level of outrageousness required to sustain a claim for intentional infliction of emotional distress. *See also Hartleip. v. McNeilab, Inc.*, 83 F.3d 767, 777 (6th Cir.1996) (allegations that defendant threatened plaintiff's employment stability, applied pressure on her on a weekly basis to engage in conduct that she had no interest in pursuing, constantly called and wrote to her; and discussed sexual fantasies with other employees about her was insufficient to state intentional infliction of emotional distress claim)(applying Michigan law).

Herein, Plaintiff has alleged that Conner engaged in extreme and outrageous con-

duct, to wit: 1) the statement that "We got a $25,000 contract for your ass and your ass had better be worth it."; 2) writing on a pink, 3x5 index card 35–27–35, and asking Plaintiff if they were her measurements; 3) starting a conversation about oral sex; 4) the comment about the kind of donut he thought Plaintiff would like; and 5) staring at her. Although this behavior is certainly inappropriate for the workplace and may have caused Plaintiff to feel hurt or embarrassed, the Court concludes, as a matter of law, that Conner's actions were not so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency.[8] Accordingly, Plaintiff may not maintain an action for intentional infliction of emotional distress, based on Conner's conduct. The Government's Motion for Summary Judgment on that claim, based on Conner's actions, is SUSTAINED, on the ground that his conduct was not extreme and outrageous, within the meaning of Ohio law.

For the foregoing reasons, the Motion of the United States to Dismiss (Doc. # 86–1) is OVERRULED. The Government's Motion for Summary Judgment on Plaintiff's Negligent and Intentional Infliction of Emotional Distress Claims (Doc. # 86–2) is SUSTAINED. The Government, accordingly, is no longer a party to this litigation. As a result of the rulings contained herein, only one claim remains in this litigation, to wit: Plaintiff's state law claim for retaliation against Facilities Plus and Richard Mast.

Although federal courts have the discretion to dismiss supplemental state law claims after granting summary judgment on the federal claims, the Court considers that it would be an abuse of that discretion to dismiss the remaining state law claim in this case. This litigation has been pending

8. Because the Court concludes that Conner's conduct was not extreme and outrageous, within the meaning of Ohio law, the Court need not address whether there is a genuine issue of material fact that he intended to cause Plaintiff emotional distress.

for many years, and the parties have engaged in extensive discovery. Moreover, this Court has familiarity with the issues (factual as well as legal) presented in this litigation, by virtue of ruling on numerous motions to dismiss and for summary judgment. Therefore, even though the Court has concluded that the United States, the sole remaining federal Defendant, is entitled to summary judgment on all of Plaintiff's claims against it, the Court will continue to exercise supplemental jurisdiction over Plaintiff's retaliation claim against Defendants Facilities Plus and Mast.

Counsel for Plaintiff and for Defendants Facilities Plus and Mast (not Pamela Stanek, counsel for the Government) will take note that a conference call will be held on Tuesday, March 20, 2001, at 5:30 p.m., to set a trial date and other dates leading to a resolution of this litigation.