**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0540n.06
Filed: August 1, 2007

**No. 06-6012**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ANJANETTA MACKEY, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellee*. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**BEFORE: KEITH and COLE, Circuit Judges; and OLIVER, District Judge.**[*]

**SOLOMON OLIVER, JR., District Judge.** Plaintiff-Appellant, AnJanetta Mackey ("Plaintiff-Appellant"), filed this action in the United States District Court for the Eastern District of Kentucky, alleging that Defendant-Appellee, United States of America ("Defendant-Appellee" or "United States"), was liable under the Federal Tort Claims Act ("FTCA") for the negligent death of her husband, Clifford James Mackey ("Mackey"). The district court granted the United States' motion to dismiss for lack of subject-matter jurisdiction. For the reasons that follow, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

---

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

Mackey, Plaintiff-Appellee's deceased husband, worked at a Postal Service Center in Lexington, Kentucky. On January 12, 2004, a United States Postal Service ("USPS") supervisor, Tracy Gross, was told by another postal employee, Glenn Richardson ("Richardson"), that he wished to injure or harm Mackey. Despite having the opportunity to warn Mackey of this threat, the supervisor failed to do so. That evening, Mackey was shot and killed in his home by Richardson.

Plaintiff-Appellant brought suit under the FTCA, which grants jurisdiction to the United States district courts over "civil actions or claims against the United States, for money damages . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). She asserted two bases for recovery: (1) that the USPS negligently breached a duty created by its "zero tolerance" policy to inform Mackey of Richardson's intent to harm him, which proximately caused Mackey's death; and (2) that the USPS negligently breached its duty created by virtue of the "special relationship" between employer and employee under Kentucky law to inform Mackey of Richardson's intent to harm, which proximately caused Mackey's death. Plaintiff-Appellant did not seek to hold the USPS liable for the acts of Richardson, who was not working at the time of the incident, but instead relied on the theory that the USPS had a duty to warn Mackey of Richardson's threat to harm him.

The United States filed a motion to dismiss the complaint for lack of subject-matter jurisdiction or, in the alternative, for summary judgment. In so doing, the United States argued that: (1) Plaintiff-Appellant's suit was precluded by § 2680(h) of the FTCA, which provides that the United States shall not be liable for a claim arising out of assault or battery; (2) if the suit was not precluded, the USPS's zero-tolerance policy against workplace violence did not create a duty to

2

warn; and (3) no special relationship existed between the USPS as employer and Mackey as employee so as to impose upon the USPS a duty to warn Mackey of any threat posed by Richardson.

The district court found that the assault and battery exception would preclude suit in regard to the claim based on the USPS's zero-tolerance policy. The court concluded that while *Sheridan v. United States*, 487 U.S. 392 (1988), made it clear that "the negligence of other Government employees who allowed a foreseeable assault and battery to occur may furnish a basis for Government liability that is entirely independent of [the assailant's] employment status" *Mackey v. United States*, No. 5:05-401-JMH, slip op. at 5 (D. Ky. July 24, 2006) (quoting *Sheridan*, 487 U.S. at 401), no such independent basis for liability existed in this case because the zero-tolerance policy could be said to require Defendant-Appellant to warn Mackey only of threats by co-employees; thus, the assault and battery exception applied, so the government had not waived sovereign immunity. *Id.* at 7. The district court also found that even if the assault and battery exception did not preclude liability, the USPS's zero-tolerance policy did not create an independent duty on the part of the employer. The zero-tolerance policy required "'[USPS] employees, especially managers and/or supervisors, to take affirmative steps when becoming aware of violence directed at an employee by another employee or aware of threatened violence directed at an employee by another employee.'" *Id.* (quoting Pl.'s Am. Compl. ¶ 10). However, the district court held that "[u]nder Kentucky law, simply promulgating a policy does not create a duty of care." *Id.* at 8.

The district court further determined that Plaintiff-Appellant's claim that a special relationship between employer and employee created a duty to warn was not viable because "Plaintiff fails to cite, and the Court has not found, any Kentucky cases specifically recognizing that a special relationship between an employer and an employee gives rise to a duty to warn of threats

3

by third parties." *Id.* at 9. The court did not explicitly address whether the assault and battery exception would have precluded suit if Kentucky law provided for such a duty to warn.

On appeal, Plaintiff-Appellant abandons her zero-tolerance argument as a separate basis for liability and argues only that a special employer/employee relationship created a duty to warn on the part of the employer.

## II. LAW AND ANALYSIS

On appeal, we must decide whether the assault and battery exception to the FTCA bars Plaintiff-Appellant's claim and, if not, whether Kentucky law recognizes a special employer/employee relationship that would create an employer's duty to warn an employee of a foreseeable harm. A district court's determination on subject-matter jurisdiction is subject to *de novo* review. *Montez v. United States*, 359 F.3d 392, 395 (6th Cir. 2004).

## A.    The FTCA's Assault and Battery Exception

It is a well-settled principle that the United States is immune from suit unless it expressly waives its sovereign immunity and consents to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Under the FTCA, the United States waives its sovereign immunity, and grants exclusive jurisdiction for

> civil actions on claims against the United States . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). However, there is an exception to this waiver, and accordant grant of jurisdiction, for any claim arising out of an assault or battery. *Id.* § 2680(h) ("The provisions of . .

4

. [28 USCS § 1346(b)] shall not apply to . . . [a]ny claim arising out of assault [or] battery . . . .")
(first alteration in original). Defendant-Appellee argues, as it did below, that the instant case falls
within the assault and battery exception and therefore the government is immune.

Plaintiff-Appellant primarily relies upon *Sheridan* in support of her argument that her claim
is not barred by the FTCA assault and battery exception. The United States argues that *Sheridan*
does not support governmental liability on these facts.

In *Sheridan*, the plaintiffs brought suit against the United States for injuries they sustained
when an "obviously intoxicated off-duty serviceman named Carr fired several rifle shots into [their]
automobile . . . ." 487 U.S. at 393-94. Prior to the shooting, three naval corpsmen came across Carr
"lying face down in a drunken stupor." *Id.* at 395. Carr rebuffed their attempts to take him to the
emergency room, breaking away and revealing his rifle. *Id.* The corpsmen fled, and "neither took
further action to subdue Carr, nor alerted the appropriate authorities that he was heavily intoxicated
and brandishing a weapon." *Id.* The plaintiffs sued the United States for the alleged negligence of
the corpsmen in not preventing Carr's use of the rifle. *Id.*

While the Court in *Sheridan* held that the assault and battery exception is "unquestionably
broad enough to bar all claims based entirely on an assault or battery," the Court also found that

> [t]he import of these words is less clear, however, when they are
> applied to a claim arising out of two tortious acts, one of which is an
> assault or battery and the other of which is a mere act of negligence.
> Nonetheless, it is both settled and undisputed that in at least some
> situations the fact that an injury was directly caused by an assault or
> battery will not preclude liability against the Government for
> negligently allowing the assault to occur.

*Id.* at 398. Thereafter, the Court discussed relevant precedent, especially *United States v. Muniz*, 394
U.S. 150 (1963), in seeking to demarcate when liability would be precluded and when it would be

allowed. In *Muniz,* recovery against the United States by a prisoner was allowed for damage caused by the negligence of prison officials in failing to prevent an assault on the plaintiff by other inmates. The *Sheridan* Court indicated that one explanation for the *Muniz* holding could be found in the reasoning of *Panella v. United States*, 216 F.2d 622 (2d Cir. 1954). *Panella* was also a case wherein a prisoner sued the Government, claiming that his assault by an inmate was caused by the negligence of a Government employee. In writing for the court in *Panella*, Judge Harlan (later Justice Harlan) explained that the exception to the FTCA for assaults and batteries should be read to apply to claims that would otherwise be authorized by the basic waiver of immunity for personal injury "caused by the negligent or wrongful act or omission *of any employee of the government* while acting within the scope of his office or employment . . . ." *Id.* at 623. Thus, as explained in *Sheridan*, Judge Harlan reasoned that "[s]ince an assault by a person who was not employed by the Government could not provide the basis for a claim under the FTCA, the exception could not apply to such an assault; rather, the exception only applies in cases arising out of assaults by federal employees." 487 U.S. at 400.

The Court in *Sheridan* went on to further explain that if one were to fully employ the logic of *Panella*, the exception should be construed to apply only to claims that would be authorized by the basic waiver of sovereign immunity. Viewed in this manner, the exception would also not apply to assaults and batteries committed by federal employees who were not acting within the scope of their office or employment. *Id.* at 401. In *Sheridan*, the alleged assault and battery was committed by a drunken off-duty serviceman. Consequently, the serviceman's conduct itself could not serve as a basis of liability, regardless of whether it was negligent or intentional. However, *Sheridan* held that "the negligence of other Government employees who allowed a foreseeable assault and battery

6

to occur may furnish a basis for Government liability that is entirely independent of [the assailant's] employment status." *Id*. Assuming that under Maryland law the facts involved in *Sheridan* would provide a basis for recovery if the naval hospital had been owned and operated privately, the Court concluded:

> [I]t seems perfectly clear that the mere fact that Carr happened to be an off-duty federal employee should not provide a basis for protecting the Government from liability that would attach if Carr had been an unemployed civilian patient or visitor in the hospital. Indeed, in a case in which the employment status of the assailant has nothing to do with the basis for imposing liability on the Government, it would seem perverse to exonerate the Government because of the happenstance that Carr was on a federal payroll.

*Id.* at 402.

In addressing the Plaintiff-Appellant's claim in the instant case that under Kentucky law the employer/employee relationship is a special relationship that gives rise to an employer's duty to warn of threats by third parties, the district court did not specifically discuss whether breach of such a duty would give rise to liability of the type recognized by *Sheridan*. In finding that no such duty existed under Kentucky law, the court seemed to implicitly recognize that it would not be precluded by the assault and battery exception had such a duty existed under Kentucky law.

In this case, as in *Sheridan*, Richardson was not on duty when he allegedly committed the crime. Thus, the United States would not be liable under the FTCA for conduct in the absence of the assault and battery exception. However, as in *Sheridan*, the basis for liability in the instant case is independent of Richardson's employment status because Plaintiff-Appellant seeks recovery for the government's own negligence for the failure to warn Mackey of a threat by a third party. Consequently, the fact that the assailant in the instant case, Richardson, was a postal worker is no

more relevant than the fact that the assailant was a sailor in *Sheridan*. Therefore, the assault and battery exception would not preclude a suit based on a duty imposed on an employer growing out of a special relationship with the employee that requires the employer to warn the employee of harm by a third party.

**B.      Employer's Duty to Warn Under Kentucky Law**

On appeal, Plaintiff-Appellant acknowledges that "[t]he Kentucky Supreme Court has not specifically held that the employer/employee relationship is a 'special relationship' carrying a duty for the employer to warn an employee on-duty of foreseeable risk of criminal harm by a third party." (Appellant's Br. 15). She argues, however, that the Kentucky Supreme Court and the Kentucky Court of Appeals have strongly suggested that the employer/employee relationship is a special relationship that creates a duty on behalf of the employer to warn the employee of the potentially criminal acts of a third party.

According to Plaintiff-Appellant, the two primary Kentucky cases in which this duty has been suggested are *James v. Wilson*, 95 S.W.3d 875 (Ky. Ct. App. 2002), and *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840 (Ky. 2005). She maintains that the most explicit statement suggesting a duty is found in *Wilson*. In *Wilson*, the Kentucky Court of Appeals affirmed the dismissal of a lawsuit brought by parents against school officials, fellow students, and others for negligently causing the death of their children when a fellow student shot them at school. In rejecting the argument that some of the defendants were liable under Kentucky law because they knew or should have known that the assailant was planning to kill those students, the court said, "[i]t is well settled in Kentucky jurisprudence that there is no legal duty to report the commission of a

8

crime by another, let alone the possibility of a crime being committed by another." *Wilson*, 95 S.W.3d at 889.

The court's conclusion in this regard was bolstered by Section 314 of the Second Restatement of Torts. The court stated that:

> Section 314 of the Restatement, entitled Duty to Act for Protection of Others, reads as follows: "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." Comment (c) to Section 314 clarifies this point: "The rule stated in this Section is applicable irrespective of the gravity of the danger to which the other is subjected and the insignificance of the trouble, effort, or expense of giving him aid or protection." To ensure that no doubt remains as to the implications of this rule, comment (c) goes so far as to say that:
>
>> The result of the rule has been a series of older decisions to the effect that one human being, seeing a fellow man in dire peril, is under no legal obligation to aid him, but may sit on the dock, smoke his cigar, and watch the other drown. Such decisions have been condemned by legal writers as revolting to any moral sense, but thus far they remain the law.

*Id.* at 889-890 (1965) (bold omitted).

The *Wilson* court noted that there were exceptions to the general rule, which are set forth in Section 314A of the Restatement, entitled "Special Relations Giving Rise to Duty to Aid and Protect." *Id.* at 890. The court found none of those exceptions to be applicable to the case before it.

Section 314A states:

(1) A common carrier is under a duty to its passengers to take reasonable action
    (a)    to protect them against unreasonable risk of physical harm, and
    (b)    to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

(2)     An innkeeper is under a similar duty to his guests.
(3)     A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.
(4)     One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

In the context of discussing Section 314A, the *Wilson* court stated that, "[i]n the comments relating to this exception it is noted that the employer/employee relationship gives rise to a similar duty . . . ." 95 S.W.3d at 890. It is this language that indicates, according to Plaintiff-Appellant, that Kentucky courts would recognize a duty in this case. The district court rejected Plaintiff-Appellant's argument, finding that the comments to Section 314A indicating that the employer/employee relationship gives rise to a similar duty as those explicitly referenced in that Section must be read to impose only a duty on an employer to inform an employee as to harm that occurs *within the scope of his employment*. *Mackey*, slip op. at 10.

The district court based its conclusion partly on the fact that the comments to Section 314A reference Section 314B. *Id.* Section 314B reads as follows:

> (1) If a servant, while acting within the scope of his employment, comes into a position of imminent danger of serious harm and this is known to the master or to a person who has duties of management, the master is subject to liability for a failure by himself or by such person to exercise reasonable care to avert the threatened harm.
> (2) If a servant is hurt and thereby becomes helpless when acting within the scope of his employment and this is known to the master or to a person having duties of management, the master is subject to liability for his negligent failure or that of such person to give first aid to the servant and to care for him until he can be cared for by others.

Section 314(B) clearly applies only to harm that occurs within the scope of the victim's employment.

In light of the language of this Section, it cannot be fairly concluded that the judge in *Wilson*

10

was opining that such duty as an employer might have to an employee was of the type urged in the instant case. As such, we find the district court's position to be well-taken.

In *Carneyhan*, the other case on which Plaintiff-Appellant relies, the Kentucky Supreme Court addressed the issue of "[w]hether a special relationship exists between a national fraternal organization and one of its local chapters, as would give rise to an affirmative duty of supervision and control . . . ." *Carneyhan*, 169 S.W.3d at 850. In that case, parents sued for the death of their minor child who, after consuming alcohol at a local chapter of a national fraternity, was involved in a fatal car crash. The *Carneyhan* court found that the national fraternity did not have a special relationship with its local fraternity such as to support liability under Kentucky law. *Id.* at 854.

Plaintiff-Appellant acknowledges that the Kentucky Supreme Court does not explicitly reference the employer/employee relationship as constituting a special relationship that creates a duty to warn. Instead, she relies upon a case, *Thompson ex rel. Thompson v. Skate Am.*, 261 Va. 121 (Va. 2001), that the *Carneyhan* court briefly cited in its broad discussion of cases and other material regarding the various special relationships that have been recognized. The Kentucky Supreme Court's only reference to that case was the following: "See also *Thompson ex rel. Thompson v. Skate Am.*, 261 Va. 121, 540 S.E. 2d 123, 129 (Va. 2001) (listing several de jure and de facto relationships)." *Carneyhan*, 169 S.W.3d at 850. Plaintiff-Appellant takes this reference as a suggestion that the Kentucky Supreme Court would recognize the employer and employee as having a special relationship of the type it urges in this case. Plaintiff-Appellant reasons:

> *Thompson* analyzed "special relationships" giving rise "to a duty of care . . . to warn . . . against the danger of harm from the reasonably foreseeable criminal acts committed by a third person" and noted that an "employer has a *de jure* special relationship with its employees." 540 S.E.2d at 129, citing *A.H. v. Rockingham Publishing Co.*, 495 S.E.2d

11

482, 485 (Va. 1998). That the Kentucky Supreme Court cited to *Thompson* as identifying special relationships receiving "widespread judicial recognition" is a strong and direct indication that the Supreme Court would hold that the employer-employee relationship is a "special relationship."

(Appellant's Br. 17-18.)

This argument is simply not persuasive on the issue of whether Kentucky recognizes a special relationship between an employer and employee that creates an employer's duty to warn the employee of harm from third parties committed when the employee is not acting within the scope of his employment. Simply put, Plaintiff-Appellant has not shown that Kentucky imposes a duty of care on the USPS to warn Mackey of any threatening comments Richardson may have made to the supervisor.

Furthermore, *Carneyhan*'s discussion regarding employer/employee relationships in the context of deciding whether the national fraternity had sufficient control over the local fraternity to create a special relationship is not helpful to Plaintiff-Appellant.

The *Carneyhan* court stated:

> Judicially imposed limitations on special relationships between employers and employees are highly illuminating as to the degree of ability to control sufficient to give rise to a duty of reasonable care in the exercise of control. The Second Restatement provides that 'a special relationship exists between master and servant only if the servant is using an instrumentality of the employment relationship to cause harm, *i.e.*, either the master's chattel or premises entered by virtue of the employment relationship. The proposed Third Restatement puts this requirement more succinctly: "Special relationships giving rise to the duty provided in [§ 41(a)] include: . . . (3) an employer with employees *when the employment facilitates the employee's causing harm to third parties*."

12

*Carneyhan*, 169 S.W.3d at 852 (citations omitted).  Neither this statement, nor any other sections of the Restatement referenced by Plaintiff-Appellant, indicate that a duty of care exists under the circumstances herein.  For these reasons, we affirm the district court's determination that the USPS did not have a duty of care to Mackey.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court dismissing Plaintiff-Appellant's complaint for lack of subject-matter jurisdiction.