NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0027n.06

Case No. 17-3121

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CHRISTOPHER B. STOUT, | ) | **FILED** |
| | ) | Jan 12, 2018 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | OPINION |
| | ) | |

BEFORE: MOORE, WHITE and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Plaintiff-Appellant Christopher B. Stout ("Stout") brought this action against the United States under the Federal Tort Claims Act ("FTCA" or "the Act"), 28 U.S.C. § 1346(b), alleging sexual assaults against him by a Veterans Affairs Medical Center ("VAMC") nurse while Stout was a patient at the VAMC in Dayton, Ohio ("VAMC Dayton"). The district court dismissed the complaint, holding that the claims were barred under the FTCA because they arose out of an intentional tort; the alleged conduct occurred outside the scope of the nurse's employment; and Stout's allegations did not establish a duty on the part of the United States independent of the nurse's employment status. This appeal followed. We affirm in part, reverse in part, and remand for further proceedings.

## I. Background

Beginning on or about October 25, 2012, Stout was a patient at VAMC Dayton due to symptoms of depression and suicidal thoughts. **R. 14: Am. Compl., PageID# 81, ¶ 7.** His condition and the medication prescribed and administered to him by VAMC Dayton employees, Stout alleges, caused him "substantially impaired . . . judgment and control" and left him "vulnerable to the unwanted assaults" that gave rise to his complaint. ***Id.*, ¶ 8, 9.**

In early November 2012, while a patient at VAMC Dayton, Stout alleges "he was repeatedly subjected to [nonconsensual] sexual contact and offensive touching of a sexual nature" by Licensed Practical Nurse ("LPN") Patricia Poling ("Poling"). ***Id.*, PageID# 81-82, ¶¶ 8, 11.** Stout alleges that Poling continued to make unwanted telephone and personal contact and unwanted sexual advances towards him after his release. ***Id.*, PageID# 82-83, ¶¶ 15-19.** On or about the first week of November 2012, Stout allegedly complained to "other VAMC Dayton employees" about Poling's conduct, ***id.*, PageID# 82, ¶ 13**, and "VAMC Dayton employees witnessed some of the . . . sexual assault[s]," ***id.*, ¶ 14**. Stout alleges that he reported the incidents to VAMC Police, who subsequently initiated an investigation. ***Id.*, PageID# 83, ¶ 20, 22.** According to Stout, VAMC employees reported to VAMC Police that Poling told co-workers that "she was dating a patient," ***id.*, ¶ 21** and that Poling "had previously fostered a relationship with a former patient," ***id.*, PageID# 83-84, ¶ 26.** Stout alleged no sexual assault by Poling against any VAMC Dayton patient prior to Poling's alleged assaults against Stout.

Stout filed an administrative claim with the Department of Veterans Affairs ("DVA") in October 2014. **R. 14-1, Ex. 1 to Am. Compl.** The DVA denied Stout's claims on May 1, 2015. **R. 14-2, Ex. 2 to Am. Compl.** Stout then brought the present action against the United States.

Stout's amended complaint,[1] filed April 5, 2016, pursuant to the FTCA, alleged injuries "caused by the negligent and wrongful acts and omissions of employees of the United States Government while acting within the scope of their office and employment." **R. 14: Am. Compl., PageID# 80, ¶ 2.** The amended complaint asserted four claims: (1) negligent hiring, retention, and supervision, *id.*, **PageID# 84-85, ¶¶ 28-36**; (2) negligence, *id.*, **PageID# 85-86, ¶¶ 37-46**; (3) intentional infliction of emotional distress, *id.*, **PageID# 86-87, ¶¶ 47-54**; and (4) negligent infliction of emotional distress, *id.*, **PageID# 87, ¶¶ 55-59**. For each claim, Stout includes the identical paired assertions that "[t]he acts or omissions set forth above would constitute a claim under the laws of the State of Ohio" and "[t]he Defendant is liable pursuant to 28 U.S.C. § 1346(b)(1)." **R. 14: Am. Compl., PageID# 85, ¶¶ 35-36; PageID#86, ¶¶ 45-46; PageID# 87, ¶¶ 53-54, 58-59.**

The United States moved to dismiss under Rule 12(b)(1), on the grounds that Stout's claims all arose out of the alleged assault and battery, and thus were barred by the FTCA's "intentional tort exception," 28 U.S.C. § 2680(h), which rules out claims against the United States "arising out of assault, battery," or one of a number of other intentional torts. **R. 23: Mot. to Dismiss, PageID# 136-44**. The United States also argued that Stout's intentional infliction of emotional distress and negligent infliction of emotional distress claims were barred by the requirement that the government employee's "negligent or wrongful act or omission" have been done "while acting within the scope of [the employee's] office or employment." **R. 23: Mot. to Dismiss, PageID# 129-36**; *see* 28 U.S.C. § 1346(b)(1).

---

[1]Stout filed his original complaint September 10, 2015. **R. 1: Compl.** Following Defendant United States' filing of a motion to dismiss, **R. 10: Motion**, Stout filed an amended complaint, **R. 14: Am. Compl.** The amended complaint differed only in that it was accompanied by exhibits, including an affidavit of merit. **R. 14-3: Affidavit**.

The district court first determined that the conduct alleged in Stout's complaint could not have been within Poling's scope of employment. Therefore, the court held, the FTCA did not apply to Stout's claims related to Poling's conduct. The analysis then turned to the issue of the "intentional tort exception." The court underscored that Stout's allegations of liability could not "be divorced from Poling's employment with the Defendant" and held all of Stout's claims to be barred as arising out of the alleged sexual assault.

Because the district court found that the alleged sexual assault was outside the scope of Poling's employment and that it fell within the § 2680(h) intentional tort exception, the court held that Stout's FTCA claims were precluded. ***Id.*, PageID# 177**. The court granted the United States' motion, and dismissed the action without prejudice. ***Id.*, PageID# 179**. This appeal followed.

## II.  Legal Framework

### A.  Standard of Review

We review de novo a district court's grant of a 12(b)(1) motion to dismiss, *Saltsman v. United States*, 104 F.3d 787, 789 (6th Cir. 1997), construing the complaint in the light most favorable to the plaintiff, *Leisure v. FBI*, 2 F. App'x 488, 489 (6th Cir. 2001). The plaintiff has the burden of proving jurisdiction. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015) (citing *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005)). A Rule 12(b)(1) motion may attack jurisdiction facially or factually. *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial challenge, as here, tests the pleading's sufficiency, not the veracity of its allegations. *Id.* Thus, a court must take the complaint's non-conclusory allegations as true. *O'Bryan v. Holy See*, 556 F.3d 361, 375-76 (6th Cir. 2009). To survive a facial challenge, a "plaintiff's burden is not onerous," *Wilburn*, 616 F. App'x at 852

(citation omitted): the complaint "must contain non-conclusory facts which, if true, establish . . . the district court['s] jurisdiction," *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (citing *O'Bryan*, 556 F.3d at 375-76).

## B.  Federal Tort Claims Act

The United States may not be sued absent its consent. *Mackey v. United States*, 247 F. App'x 641, 643 (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)).  The FTCA, a limited waiver of sovereign immunity, is "the exclusive remedy for suits against the United States or its agencies sounding in tort." *Wilburn*, 616 F. App'x at 852-53 (citation omitted).  The terms of the United States' consent to be sued as set forth in the Act fix the boundaries around a federal court's jurisdiction over such cases.  The Act authorizes suits against the United States

> for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  The FTCA's waiver of sovereign immunity is subject to exceptions, however.  28 U.S.C. § 2680.  Where one of the exceptions applies, jurisdiction fails. *Carlyle v. United States, Dep't of Army*, 674 F.2d 554, 556 (6th Cir. 1982).

The exceptions relevant to the analysis in this case include one for "[a]ny claim arising out of assault [or] battery," within the broader intentional tort exception.  28 U.S.C. § 2680(h); *see also Wilburn*, 616 F. App'x at 857.  The Supreme Court in *United States v. Shearer*, 473 U.S. 52 (1985) (plurality opinion), urged a broad reading of the phrase "arising out of": "Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery." *Id.* at 55.  In *Sheridan v. United States*, 487 U.S. 392 (1988), however, the Court took a significant turn away from *Shearer*.  Reaffirming the

preclusive effect of the intentional tort exception on claims "based entirely on an assault or battery," *id.* at 398, the Court held nonetheless that "the negligence of other Government employees who allowed a foreseeable assault and battery to occur may furnish a basis for Government liability . . . entirely independent of [the tortfeasor's] employment status," *id.* at 401; *Wilburn*, 616 F. App'x at 858.

A second exception, based on the exercise of a discretionary function, removes another area from the FTCA's waiver of sovereign immunity relevant to the analysis here: claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *Wilburn*, 616 F. App'x at 860.

### III. Analysis

While much of Stout's amended complaint consists of conclusory allegations and cursory legal argument, we take non-conclusory factual allegations as true, and construe those allegations in the light most favorable to Stout as the nonmoving party. *Leisure*, 2 F. App'x at 489. We proceed to analyze Stout's claims in the order presented in his amended complaint.[2]

### A. Negligent Hiring, Retention, and Supervision

In his first claim, Stout avers, among other things, that "[s]everal of the employees, including Poling[,] . . . were incompetent in their job duties." **R. 14: Am. Compl., PageID# 84-85, ¶¶ 29-34.** The statement of this claim also refers to Poling's "intentional conduct," ***Id.*, PageID# 84, ¶ 32**, and otherwise overlaps with one or more of Stout's other claims. We take

---

[2]We observe, with the district court, the parties' agreement that the intentional tort exception applies to all claims arising out of Poling's alleged sexual assault of Stout; where the parties differ is in whether a given claim of Stout's can be fairly characterized as "arising out of" the alleged acts of sexual assault. **R. 30: Op.-Order, PageID# 177**.

Stout's first claim, nevertheless, at face value as a claim for negligent hiring, retention, and supervision.

Stout's references to "negligent hiring, retention, and supervision" are bald assertions of a legal conclusion, not factual allegations. Those assertions are the classic "conclusory allegations or legal conclusions" in factual garb. *See O'Bryan,* 556 F.3d at 375-76 (citation omitted). Such allegations are insufficient to overcome a motion to dismiss. *Id.*

More importantly, this claim runs afoul of well-settled precedent. Despite the turn in *Sheridan* away from the "sweeping" reading of the intentional tort exception's "arising out of" language, we have established that "the exception bars [negligent training or negligent supervision] claims." *Wilburn*, 616 F. App'x at 859 (citing *Satterfield v. United States*, 788 F.2d 395, 399-400 (6th Cir. 1986)). Thus, negligent hiring, retention, and supervision claims in connection with an intentional tort are deemed to arise out of that tort, and are thus precluded. *Id.* Therefore, Stout's first claim was properly dismissed by the district court as barred by the FTCA's intentional tort exception. *See* 28 U.S.C. § 2680(h). Moreover, we have "consistently held that agency supervisory and hiring decisions fall within the discretionary function exception." *Snyder v. United States*, 590 F. App'x 505, 510 (6th Cir. 2014) (*citing, inter alia, O'Bryan*, 556 F.3d at 384). Therefore, this claim falls within two statutory exceptions and accordingly fails.

## B. Negligence

We now turn to Stout's second claim, for negligence.[3] In its analysis, the district court focused on the requirement that FTCA "liability must be independent of the tortfeasor's

---

[3]Stout's amended complaint stated the claim for negligence in terms that, in part, overlapped with negligent hiring, retention, and supervision. **R. 14: Am. Compl., PageID# 85-86, ¶¶ 40, 41-43**. That section of the amended complaint also referred to a "duty to provide Plaintiff ordinary care" and other language that reads like a complaint

employment status." *Stout v. United States*, No. 2:15-CV-2812, 2017 U.S. Dist. LEXIS 2124 at \*10 (S.D. Ohio Jan. 6, 2017) (citing *Wilburn*, 616 F. App'x at 859). The court found that "the allegations of liability in this case cannot be divorced from Poling's employment with the Defendant." *Id.* Moreover, the court discounted Stout's argument that "the negligence of other employees of the defendant allowed these foreseeable acts of assault and battery to occur upon him," **R. 25 Memo in Opp'n to Mot. to Dismiss, PageID# 154-55**, as amounting to a negligent hiring, retention, and supervision claim, which was therefore precluded. *Stout*, 2017 U.S. Dist. LEXIS 2124 at \*9. Stout argues that "the defendant had an independent duty to safeguard Plaintiff from assaults while in the VAMC Dayton." (Appellant's Br. at 10). He further contends that, in holding all of his claims to be "premised on [Poling's] intentional tort" and thus barred by § 2680(h), the district court "improperly focused on a single actor's conduct" when in fact Stout alleged tortious conduct by other government employees. (*Id.* at 7). The Government disputes that Stout has established a duty (Appellee's Br. at 14-18), noting that the district court "did not specifically address" Stout's "newfound" theory of liability. (*Id.* at 16). The Government also avers that Stout's allegations lack sufficient detail. (*Id.* at 17).

Stout relies on *Sheridan* and related cases in support of his argument that "the existence of . . . [an] intentional [tort] is not an automatic grant of immunity for the VAMC Dayton as to the rest of [his] claims . . . ." (Appellant's Br. at 7-8). In *Sheridan*, the Supreme Court declared

---

for medical malpractice. *Id.*, **PageID# 85, ¶¶ 38-39.** However, even though Stout submitted an affidavit of merit by a Ph.D. psychologist in support of his action, **R. 14-3: Ex. 3 to Am. Compl., PageID# 95-96**, none of his factual allegations made any reference to the medical care he received at VAMC Dayton. Indeed, in his administrative complaint, Stout stated that Poling's acts of sexual assault "were not in any way related to the treatment of claimant while at VAMC Dayton or any other location." **R. 14-1: Ex. 1 to Am Compl., PageID# 91.** On the other hand, the factual allegations in the amended complaint support the inference, borne out by the language in Stout's later filings, that Stout is indeed alleging that VAMC Dayton negligently failed to prevent the alleged acts of sexual assault by Poling. It is this claim that we address.

it well-settled law "that in at least some situations the fact that an injury was directly caused by an assault or battery will not preclude liability against the Government for negligently allowing the assault to occur." 487 U.S. at 398. The Court held that "the negligence of other Government employees who allowed a foreseeable assault and battery to occur may furnish a basis for Government liability that is entirely independent of [the tortfeasor's] employment status." *Id.* at 401. After *Sheridan*, then, "the intentional tort exception does not apply to liability that is independent of the . . . tortfeasor's status as a government employee." *Wilburn*, 616 F. App'x at 859; *see also Sheridan*, 487 U.S. at 403.

To be held liable for negligence towards another, a party must be bound by a duty towards the other. Absent duty, "there can be no liability for failure to discharge such duty and, thus, no negligence." *Lewis v. Key Market, Inc.*, 1992 Ohio App. LEXIS 4316 at *5 (Ohio Ct. App. 1992); *see also Atria v. Vanderbilt Univ.*, 142 F. App'x 246, 251 (6th Cir. 2005). Whether a duty existed in an action for negligence is a question of law. *Jaycox v. Setty Family Veterans Residential Care Home*, 97 F. App'x 640, 644 (6th Cir. 2004) (citing *Mussivand v. David*, 544 N.E.2d 265, 270 (Ohio 1989)). Critically, the duty must be "independent of the fact that [the tortfeasor] was a government employee," *Cline v. United States*, 13 F. Supp. 3d 868, 874, and "*independent* of [the United States'] duty to supervise the tortfeasor," *id.* at 873.

Stout looks to the factually similar case of *Bembenista v. United States*, 866 F.2d 493, 497-98 (D.C. Cir. 1989) for additional support. There, the plaintiff was repeatedly sexually assaulted (while comatose) by a medical technician at a government health facility. The D.C. Court of Appeals reversed the district court's dismissal of the plaintiff's FTCA claim for breach of a special duty of protective care, in part based on a duty grounded in state (District of Columbia) law. 866 F.2d at 497-98. The court also noted that the hospital "would be liable

even if [the plaintiff] had been assaulted by a private person" and approvingly quoted *Sheridan*:

"[I]n a case in which the employment status of the assailant has nothing to do with the basis for

imposing liability on the Government, it would seem perverse to exonerate the Government

because of the happenstance that [the malefactor] was on a federal payroll." *Id.*

(quoting *Sheridan*, 487 U.S. at 402). Here, the Government disputes the invocation of

*Bembenista* only to the extent that, in the Government's view, "Stout . . . makes no effort to

demonstrate that his allegations would fall within a parallel duty in Ohio." (Appellee's Br. at

16).

State law is the source of a cause of action pursuant to the FTCA, although federal law or

regulations may be relevant to the analysis. *Schindler v. United States*, 661 F.2d 552, 560 (6th

Cir. 1981); *see also Art Metal U.S.A., Inc. v. United States*, 753 F.2d 1151, 1157 (D.C. Cir.

1985) (holding that duties imposed by federal statutes or regulations may give rise to an FTCA

claim, "but *only* if there are analogous duties under local tort law"). Under Ohio law, it is

unlawful for "[any] person, knowing that a felony has been or is being committed, [to]

knowingly fail to report such information to law enforcement authorities." O.R.C. Ann.

§ 2921.22 (A)(1). In the hospital context specifically, "hospitals[] have a duty to report a crime

pursuant to [O.R.C. Ann.] 2921.22." *In re McCulley*, No. V2005-80291, 2005-Ohio-5666 at ¶ 8

(Ohio Ct. Claims 2005). Furthermore, under Ohio criminal law, the Sexual Assaults subchapter

of Chapter 2907 (Sex Offenses) includes O.R.C. Ann. § 2907.05 (Gross Sexual Imposition),

which provides, in pertinent part:

> No person shall have sexual contact with another . . . when . . . : [t]he offender
> knows that the judgment or control of the other person . . . is substantially
> impaired as a result of the influence of any drug or intoxicant administered to the
> other person with the other person's consent for the purpose of any kind of
> medical . . . treatment . . . [or] [t]he ability of the other person to resist or
> consent . . . is substantially impaired because of a mental or physical

- 10 -

condition . . . , and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person . . .is substantially impaired because of a mental . . . condition . . . .

O.R.C. Ann. §§ 2907.05 (A)(3), (A)(5). This offense is a felony. *Id.*, Commentary.[4] Ohio law also requires that "[a] person or governmental entity that employs . . . registered nurses[ or] licensed practical nurses . . ." and has knowledge or has reason to believe that such nurse "engaged in conduct that would be grounds for disciplinary action by the board of nursing . . . shall report to the board of nursing the name of such . . . employee . . . ." O.R.C. Ann. § 4723.34.

Stout points to DVA's September 2012 directive on "sexual assaults and other public safety incidents" at Veterans Health Administration ("VHA") facilities.[5] (Appellant's Br. at 12-13.). The directive refers to the requirement that VHA employees "report instances or allegations of sexual assault . . . to supervisors or VA [Veterans Affairs] police, as appropriate." [6] According to another VHA directive issued the same month, "VA medical centers . . . must comply with their own state laws for reporting abuse and neglect."[7]

---

[4]The subchapter also contains O.R.C. § 2907.06 Sexual Imposition, which makes it unlawful to "have sexual contact with another . . . when . . . [t]he offender knows that the other person's . . . ability to appraise the nature of or control . . . the offender's or touching person's conduct is substantially impaired." O.R.C. § 2907.06 (A)(2). However, this offense is a misdemeanor, not a felony. *Id.*, Commentary.

[5]Department of Veterans Affairs, Veterans Health Administration, Sexual Assaults and Other Defined Public Safety Incidents in Veterans Health Administration (VHA) Facilities, VHA Directive 2012-026, Sexual Assaults and Other Defined Public Safety Incidents in Veterans Health Administration (VHA) Facilities (Sept. 27, 2012), https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=2797. The lengthy URL in Stout's citation to this material, in the google.com domain, does not work. (Appellant's Br. at 13 n.2). In his reply brief, Stout also makes reference to VHA Directive 2012-022, Reporting Cases of Abuse and Neglect (Sept. 4, 2012), available at https://www.vendorportal.ecms.va.gov/FBODocumentServer/DocumentServer.aspx?DocumentId=3427771&FileName=VA258-17-R-0115-040.pdf. (Appellant's Reply Br. at 11).

[6]Sexual Assaults and Other Defined Public Safety Incidents in Veterans Health Administration (VHA) Facilities, VHA Directive 2012-026, at 6.

[7]Reporting Cases of Abuse and Neglect, VHA Directive 2012-022, at 1; (*see also* Appellant's Reply Br. at 11).

If Stout's allegations are true, the duty that would have been imposed on the Government through the employees who witnessed Poling's sexual assaults would have had nothing to do with Poling's employment status. Nor would those duties have been supervisory in nature. Rather, they would have arisen on the basis of the other employees' having witnessed an act of sexual assault, and the commission of a felony under Ohio law—giving rise to a duty independent of the identity or employment status of the perpetrator. O.R.C. Ann. § 2921.22 (A)(1); *In re McCulley*, 2005-Ohio-5666 at ¶ 8; O.R.C. Ann. § 2907.05; O.R.C. Ann. § 4723.34.

To the extent that the cited VHA directives and Ohio statutes establish a legal duty, a discretionary function analysis is required. Courts apply a two-part test to determine whether the discretionary function exception applies. *Hatcher v. United States*, 512 F. App'x 527, 529 (6th Cir. 2013) (citations omitted). First, we ask whether the challenged conduct violated a mandatory regulation or policy allowing no judgment or choice. *Id.* (citing *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). If the conduct did so, the exception does not apply. *Id.* If, on the other hand, the challenged conduct was discretionary, we inquire whether the conduct involved legislative or administrative decisions grounded in policy judgments—the sorts of acts Congress sought to place outside of the FTCA's reach. *Id.* (citing *Berkovitz v. United States*, 486 U.S. 531, 537 (1988)); *see* 28 U.S.C. § 2680(a). Here, the VHA directives set forth a duty not open to the discretion attendant to policy decisions, and the Ohio statute similarly conveyed a mandate an "employee has no rightful option but to adhere to." *See Berkovitz*, 486 U.S. at 536. We find that, to the extent that the United States had a duty grounded in agency directives or state law, the discretionary function exception does not apply to such duty.

Complementing the existence of an independent duty is the issue of foreseeability, underscored by the Supreme Court in opening the door to liability where government employees "allowed a *foreseeable* assault and battery to occur." *Sheridan*, 487 U.S. at 401 (emphasis added). In broad terms, foreseeability is a crucial determinant of the existence of a duty toward a plaintiff. *Evans v. Thrasher*, 2013-Ohio-4776, 2013 WL 5864592 (Ohio Ct. App. Oct. 30, 2013) at ¶ 16; *Evans v. Ohio State Univ.*, 680 N.E. 2d 161, 171 (Ohio Ct. App. 1996). This Court has noted the Ohio Supreme Court's "expla[nation] that 'the existence of a duty depends on the foreseeability of the injury.'" *Jaycox*, 97 F. App'x at 644 (quoting *Menifee v. Ohio Welding Prods.*, 472 N.E.2d 707, 710 (Ohio 1984)).

Stout makes two main arguments[8] for the foreseeability of the alleged sexual assaults. First, he alleges that, through its employees, the Defendant "knew of another prior inappropriate relationship between Nurse Poling and a patient." **R. 25 Memo in Opp'n to Mot. to Dismiss, PageID# 147;** *see also* R. **14: Am. Compl., PageID# 83-84, ¶ 26**. Stout's amended complaint, however, made no allegation of prior assault or battery, whether sexual or otherwise, by Poling. Stout alleged that a VAMC Dayton employee said "Poling had . . . fostered a relationship with a former patient" whom she "saw . . . socially" and who frequently phoned the unit during Poling's shifts. **R. 14: Am. Compl., PageID# 83, ¶ 26**. Even if true, this allegation furnishes no basis to impute to VAMC Dayton knowledge of past criminal conduct by Poling. Therefore, this allegation does not support the foreseeability of Poling's alleged sexual assaults against Stout.

---

[8]Stout also makes a third argument for foreseeability, which goes to the issue of duty more broadly, and is dealt with *supra*. That argument has to do with the VA's directives, particularly one issued in September 2012 regarding "sexual assaults and other public safety incidents" at VHA facilities. (Appellant's Br. at 11); *see also supra*, n.5-6 and accompanying text.

Second, Stout argues that the holding of 2011 Congressional subcommittee hearings concerning prevention of sexual assaults at VA facilities[9] makes it "clear the Government knew of a substantial risk of harm." (Appellant's Br. at 11). The holding of the cited hearings certainly permits the inference that the DVA was broadly concerned with sexual assault as a policy issue. It does not, however, support the foreseeability of Poling's alleged tortious conduct.

However, Stout also alleges that he was subjected to multiple sexual assaults, at least some of them witnessed by other VAMC Dayton employees. **R. 14: Am. Compl., PageID# 82, ¶¶ 11, 13, 14.** The Government objects that Stout "does not detail who these other employees were, nor does his complaint make clear the sequence of the 'witnessing,' or 'complaining' vis-à-vis any further alleged assault." (Appellee's Br. at 17). Certainly, Stout's allegations are neither detailed nor specific. If true, though, the allegations of multiple sexual assaults, at least one of them witnessed by other VAMC Dayton employees, and about which Stout complained to at least one VAMC Dayton employee, permit a fair inference that any sexual assault subsequent to the witnessed assaults or to Stout's reporting to other VAMC employees would have been foreseeable by the Government.

Indeed, on the facts alleged by Stout, this case is analogous to *Sheridan*, 487 U.S. 392. There, three government employees (naval corpsmen) observed a fellow employee drunk and armed, and failed either to follow through on their attempt to take him to an emergency room or to alert the appropriate authorities. The Supreme Court held that, through the acts and omissions of their employees, the Government breached a separate legal duty to third parties eventually

---

[9]*Preventing Sexual Assaults and Safety Incidents at U.S. Department of Veterans Affairs Facilities: Hearing Before the Subcommittee on Health of the Committee on Veterans' Affairs*, 112th Cong. (2011).

injured in a shooting by the intoxicated employee, *id.* at 397, and that duty was "to prevent a *foreseeably dangerous individual* from wandering about unattended," *id.* at 403 (emphasis added). *See also Boles v. United States*, 3 F. Supp. 3d 491, 506-07 (M.D.N.C. 2014) (holding intentional tort exception did not bar negligence claims related to shooting by Coast Guard employee, where Coast Guard allegedly had a duty not to return weapons to foreseeably dangerous employee with history of mental illness and against whom his estranged wife had a protective order).

Taking the factual allegations in Stout's complaint as true and construing them in the light most favorable to Stout as the nonmovant—as we must—we cannot say that Stout's claim for negligence under the FTCA "appears to be immaterial . . . or . . . wholly insubstantial and frivolous." *See Holman v. Board of Education*, 388 F. Supp. 792, 795 (E.D. Mich. 1975) (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). If Stout's legal argument is less than robust, it is factual allegations that are the heart of a 12(b)(1) determination. *Outokumpu*, 673 F.3d at 440; *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). Based both on a duty under Ohio law and federal agency directives, and on the foreseeability of the alleged sexual assaults, Stout's allegations make out a colorable claim for negligence independent of Poling's employment status. Therefore, we find that Stout's negligence claim is not barred by § 2680(h).

### C. Intentional Infliction of Emotional Distress

In his third claim, Stout contends that Poling's alleged sexual assaults constituted intentional infliction of emotional distress. The Government argues, and the district court agreed, that this claim arises out of Poling's alleged sexual assaults and is therefore barred. The

Government further argues, and the district court again agreed, that this claim (among others) is also barred because the alleged tortious acts occurred outside the scope of Poling's employment.

To fall within the FTCA, "the negligent or wrongful act or omission" must have occurred while the employee was "acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); *see Mackey*, 247 F. App'x at 644-45. The district court properly noted that "determination of the scope of employment 'is governed by the law of the state in which the conduct at issue occurred.'" *Stout*, 2017 U.S. Dist. LEXIS 2124 at *6 (quoting *Coleman v. United States*, 91 F.3d 820, 823 (6th Cir. 1996)).

Under Ohio law, "[a] principal can only be liable for the intentional torts of the agent if the tortious conduct was committed within the scope of his or her employment." *Evans*, 2013-Ohio-4776, ¶ 20 (citing *Thomas v. Speedway Superamerica, LLC*, No. 06CA004, 2006-Ohio-5068, ¶ 17 (Ohio Ct. App. 2006)). This requires that "the [employee's] behavior giving rise to the tort must be calculated to facilitate or promote the business for which the agent was employed." *Stout*, 2017 U.S. Dist. LEXIS 2124 at *6 (citing *Evans*, 2013-Ohio-4776, ¶ 20). "A sexual assault by an employee upon a patient" is outside the scope of employment because the assault "in no way facilitate[s] the hospital's business." *Evans*, 2013-Ohio-4776, ¶ 21 (citation omitted); *Dodge v. United States*, 162 F. Supp. 2d 873, 884-85 (S.D. Ohio 2001) ("Ohio courts have consistently held that [sexual assaults are] outside the scope of employment.").

Here, Stout has not asserted that Poling's alleged sexual assault was in furtherance of or to facilitate VAMC's business. Stout contends that discovery might reveal Poling's "orders of care" for Stout included sexual assault, **R. 25, Memo in Opp'n to Mot. to Dismiss, PageID# 148-49**, which would ostensibly place her tortious conduct within the scope of her employment. Aside from straining credulity, this assertion does not even qualify as a factual

allegation; rather, it amounts to unbridled speculation. *See Little v. KPMG LLP*, 575 F.3d 533, 540-41 (5th Cir. 2009) (too speculative a claim cannot survive a 12(b)(1) challenge). *Cf. New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (factual allegations must establish more than a speculative right to relief in the 12(b)(6) context).

Under Ohio law, on the facts alleged, the alleged sexual assaults and any tortious or negligent acts arising out of them fall under the intentional tort exception. *See Dodge*, 162 F. Supp. 2d at 884. Accordingly, we find that the district court's dismissal of Stout's claim for intentional infliction of emotional distress was proper.

### D. Negligent Infliction of Emotional Distress

Of Stout's four claims, the one for negligent infliction of emotional distress is pleaded in the most perfunctory fashion of all. Stout makes the bald assertion that "Defendant, by its conduct, negligently inflicted emotional distress upon said Plaintiff." **R. 14: Am. Compl., PageID# 87, ¶ 57.** He also asserts that "his emotional anxiety and distress are a reasonably foreseeable result of Defendant's conduct." *Id.*, **¶ 56.** While the district court did not address this claim directly, it fell under the court's general conclusion that Stout's claims were barred both as arising from an intentional tort and as being outside the scope of Poling's employment. *Stout*, 2017 U.S. Dist. LEXIS 2124 at *7, 10.

Moreover, Stout's complaint fails to make out a claim for the tort of negligent infliction of emotional distress. Under Ohio law, the tort's prima facie elements are: "(1) the plaintiff witnessed and/or experienced a real or impending danger to another, (2) the defendant's conduct negligently caused the dangerous incident, and (3) the defendant's conduct was the proximate cause of plaintiff's serious and reasonably foreseeable emotional distress." *David v. Matter*, No. S-17-006, 2017 Ohio App. LEXIS 3652 (Ohio Ct. App. Aug. 25, 2017). Because his complaint

makes no allegation concerning "danger to another," Stout's claim fails the first element, and we need not address the remaining elements.

We therefore find that Stout's negligent infliction of emotional distress claim was properly dismissed.

## IV. Conclusion

For the reasons set forth above, we **REVERSE** the judgment of the district court as to Stout's second claim, for negligence; **AFFIRM** the judgment of the district court as to Stout's remaining claims; and **REMAND** this case for proceedings consistent with this opinion.